**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **GENON MID-ATLANTIC** | § | |
| **DEVELOPMENT, LLC,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **VS.** | § | **CIVIL ACTION NO. 4:19-cv-3078** |
| | § | |
| **NATIXIS FUNDING CORPORATION,** | § | |
| | § | |
| **Defendant.** | | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is a disagreement between the parties as to a Report and Recommendation ("R&R") issued by the Bankruptcy Court. (Doc. No. 1, R&R). The R&R is attached hereto and incorporated by reference. This Court will not repeat the procedural history set forth therein.

The R&R recommended that this Court should withdraw the reference of the instant adversary action as to a final trial on the merits, but not as to proceedings prior to the trial. The recommended posture of the case would be for all purposes identical to that often used between a district court and its corresponding magistrate court.

Plaintiff Natixis Funding Corp. argues, however, that, because this adversary action is between two parties who are not in bankruptcy, this Court should withdraw the reference for all purposes and not just for trial. This approach would eliminate the advantage of the Bankruptcy Court's lengthy history with the parties and the issues that are raised in this adversary action and that are recounted in the R&R. To forfeit this enormous advantage and adopt the approach recommended by Plaintiff would require adduction of overwhelming evidence of prejudice. None has been offered.

Moreover, the R&R identifies a concern that makes complete withdrawal especially improvident in this setting. Specifically, the Bankruptcy Court observed:

> It appears to the Court that a concerted effort has been undertaken to avoid consistent arguments before this Court, the United States District Court for the Southern District of New York and the Second Circuit Court of Appeals. Under the unique circumstances presented in this case, the Court finds this factor to support denial of the motion to withdraw the reference to ensure that geographic distance and unfamiliarity are not used to unfairly color the truth.

(Doc. No. 1, R&R at 4).

The Limited Objection of Natixis Funding Corp. to Report and Recommendation of the Bankruptcy Court Regarding Motion to Withdraw the Reference (Doc. No. 5) is hereby **DENIED.**

**IT IS SO ORDERED**.

**SIGNED** at Houston, Texas, on this the 28th day of January, 2020.

HON. KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE



United States District Court
Southern District of Texas

**ENTERED**

August 16, 2019

David J. Bradley, Clerk

ENTERED
08/15/2019

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **Chapter 11** |
| **GENON ENERGY, INC.**, *et al.*, | § | |
| | § | **Case No. 17-33695 (DRJ)** |
| Debtors. | § | **(Jointly Administered)** |
| | § | |
| | § | |
| **NATIXIS FUNDING CORP** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | **ADVERSARY NO. 18-3409** |
| | § | |
| **GENON MID-ATLANTIC, LLC** | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO THE UNITED STATES DISTRICT COURT**
**REGARDING THE WITHDRAWAL OF THE REFERENCE**
(Docket No. 65)

Natixis Funding Corporation ("NFC") seeks to withdraw the reference of this adversary proceeding to the United States District Court for the Southern District of Texas. For the reasons set forth below, the Court recommends that the District Court grant the motion only as to a final trial on the merits and deny the balance of the requested relief.

**Procedural Status**

On or about February 16, 2018, NFC filed a lawsuit against GenOn Mid-Atlantic, LLC ("GenMa") and others in the New York County Supreme Court [Docket No. 1]. In the lawsuit, NFC seeks money damages against GenMa in excess of $34 million [Docket No. 1].

GenMa removed Counts VI and VII of the NFC complaint to the United States District Court for the Southern District of New York on April 2, 2018 (the "Removed Claims"). On April 26, 2018, NFC filed a motion to remand the Removed Claims to the New York County Supreme Court [Docket No. 23]. In response, GenMa requested that the District Court transfer the Removed Claims to the Southern District of Texas [Docket No. 27].

By Order entered August 22, 2018, the District Court denied NFC's motion to remand and transferred the Removed Claims to the Southern District of Texas [Docket No. 46]. In its

1 / 5

Order, the District Court noted the undersigned's view that a close tie existed between the Removed Claims and the underlying jointly administered bankruptcy cases filed by GenOn Energy, Inc. ("GenOn") and several affiliates [Docket No. 46].

NFC appealed the District Court's Order to the United States Court of Appeals for the Second Circuit on August 23, 2018 [Docket No. 47]. By mandate issued February 15, 2019, the Second Circuit dismissed the appeal [Docket No. 53].

By order entered February 19, 2019, the District Court directed the Clerk to transfer the Removed Claims to the Southern District of Texas [Docket No. 54]. The litigation was referred to this Court pursuant to 28 U.S.C. § 157(a) and General Order No. 2005-6.

On March 5, 2019, NFC filed its motion to withdraw the reference to the Bankruptcy Court and to transfer the case back to the United States District Court for the Southern District of New York [Docket No. 65]. GenMa filed its opposition to the motion on March 26, 2019 [Docket No. 86]. NFC filed its reply to GenMa's response on April 10, 2019 [Docket No. 100].

The Court conducted a hearing on the motion on April 25, 2019. At the beginning of the hearing, NFC withdrew the request to transfer venue without prejudice. After considering the arguments of the parties, the Court took the matter under advisement.

### The Underlying Transaction and Prior Proceedings

In December 2000, GenMa entered into a sale-leaseback transaction with the owners of two coal-fired power plants located in Maryland (the "Owner-Lessors"). Pursuant to the terms of the governing agreement between the parties, GenMa was required to maintain qualifying credit support ("QCS") to secure its future rent obligations to the Owner-Lessors. GenMa was prohibited from securing the QCS with its own assets. GenMa historically provided QCS through the issuance of letters of credit from J.P. Morgan Chase Bank, N.A. ("Chase"). The Chase letters of credit were secured by guaranties from GenMa's parent company, GenOn.

In 2016, GenMa sought to substitute an alternative form of QCS. In January, 2017, GenMa paid approximately $131 million to NFC to obtain letters of credit from Natixis, New York branch ("Natixis"). A dispute arose with the Owner-Lessors whether this alternative qualified as QCS. The Owner-Lessors asserted that the Natixis letters of credit were collateralized by GenMa's assets and therefore not QCS.

In February 2017, the Owner-Lessors drew against the existing Chase letters of credit. GenMa responded by filing a state court lawsuit in New York seeking a determination that the Natixis letters of credit constituted QCS and that the draw against the Chase letters of credit was improper. In June 2017, Owner-Lessors filed their own lawsuit against GenMa, GenOn and others asserting damages for breach of the sale-leaseback agreement. The Owner-Lessors asserted that GenOn was GenMa's alter ego.

On June 14, 2017, GenOn and several affiliates filed voluntary chapter 11 cases [Docket No. 1, Case No. 17-33695]. This Court subsequently approved the joint administration of the cases. [Docket No. 4, Case No. 17-33695]. GenMa did not file a bankruptcy petition.

On June 26, 2017, the Debtors filed a motion to estimate the Owner-Lessors' claims against the Debtors [Docket No. 128, Case No. 17-33695]. Over the course of approximately 10 days, the Court considered testimony and evidence related to the QCS dispute and the underlying sale-leaseback transaction. At the conclusion of trial, the Court issued its decision.

Subsequent to the Court's decision, a settlement was reached between the Debtors and the Owner-Lessors (the "GenMa Settlement"). On December 12, 2017, this Court approved the GenMa Settlement and confirmed the Debtors' Third Amended Joint Chapter 11 Plan of Reorganization [Docket No. 1250, Case No. 17-33695].

## Analysis

Section 157(d) provides that "the district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. 157(d). "For a district court to grant permissive withdrawal under 28 U.S.C. § 157(d), it must weigh six factors to determine if cause exists." *Cano v. GMAC Mortg. Corp.*, 2009 U.S. Dist. LEXIS 127215, *5 (S.D. Tex. Sept. 29, 2009) (citing *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985)). The six factors are: "1) promoting uniformity in bankruptcy administration, 2) reducing forum shopping and confusion, 3) fostering the economical use of the debtors' and creditors' resources, 4) expediting the bankruptcy process, 5) whether jury demands have been made, and 6) core versus non-core matters." *Id*. The most important factor is whether the claims are core or non-core. *South St. Seaport Ltd. P'ship v. Burger Boy (In re Burger Boys)*, 94 F.3d 755, 762 (2d Cir. 1996).

The Promotion of Uniformity in Bankruptcy Administration. The parties do not genuinely dispute that this Court has a unique understanding of the events that gave rise to the claims asserted in this adversary proceeding. NFC argues, however, that since a plan has now been confirmed in GenOn's bankruptcy case, "the resolution of Plaintiff's claims cannot impact the value of the bankruptcy estate" and therefore this factor supports withdrawal. The Court finds this view overly simplistic. The net value of GenMa was a critical component to the overall reorganization. Both creditors and the Court made decisions based upon the GenMa Settlement. The confirmation of a plan does not magically end the administration of a bankruptcy case. This Court believes that it is uniquely positioned to render a single result that harmonizes all of the competing interests that are present in this case. The Court finds this factor supports the denial of the motion to withdraw the reference.

Reducing Forum Shopping and Confusion. NFC asserts that the GenOn's attempt to keep this case before the Bankruptcy Court constitutes improper forum shopping. NFC further asserts that its seeking to withdraw the reference to the District Court is not forum shopping. GenMA counters that it is NFC that is engaging in forum shopping citing a series of tactical decisions made by NFC during the course of the litigation. The Court rejects these arguments in

their entirety.  From the Court's perspective, each party has acted within the bounds of proper conduct in selecting its preferred venue.  Of more interest to the Court is the confusion component of this *Holland* factor.  Although neither party specifically addresses the issue, the Court has carefully reviewed the papers and transcripts filed by the parties.  It appears to the Court that a concerted effort has been undertaken to avoid consistent arguments before this Court, the United States District Court for the Southern District of New York and the Second Circuit Court of Appeals.  Under the unique circumstances presented in this case, the Court finds this factor to support denial of the motion to withdraw the reference to ensure that geographic distance and unfamiliarity are not used to unfairly color the truth.

Fostering the Economical Use of the Debtors' and Creditors' Resources.  As set forth above, this Court has significant experience with the underlying transactions that form the basis of NFC's complaint.  The Court believes this litigation will impact existing and perhaps future bankruptcy filings.  The Court finds that considerations of efficiency and practicality in the use of the parties' resources tip the scale in favor of the denial of the motion to withdraw the reference.

Expediting the Bankruptcy Process.  NFC asserts that withdrawal of the reference will not impact the underlying bankruptcy as a plan has now been consummated.  The Court agrees.  The Court finds this factor to be neutral or to support withdrawal of the reference.

The Existence of a Jury Demand.  NFC has not requested a jury trial.  Moreover, the governing agreement contains a waiver of any right to a jury trial.  As such, the restrictions of 28 U.S.C. § 157 are not implicated and this factor is neutral or supports denial of the motion to withdraw the reference.

Core vs. Non-Core.  The majority of courts evaluating a request to withdraw the reference place paramount importance on whether the claims at issue are core or non-core.  *See Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993).  A core proceeding is one that "invokes a substantive right provided by title 11 or . . . by its nature, could arise only in the context of a bankruptcy case." *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987).  Core proceedings must "directly affect a core bankruptcy function." *Luan Investment S.E. v. Franklin 145 Corp.* (*In re Petrie Retail*), 304 F.3d 223, 229 (2d Cir. 2002).  Non-core claims include claims that are related to a bankruptcy case but do not arise in or arise under the Bankruptcy Code.  28 U.S.C. § 157.

The Removed Claims asserted by NFC are claims for (i) breach of contract; and (ii) breach of the implied covenant of good faith and fair dealing.  NFC correctly points out that both claims arise under New York state law.  The fact that a claim arises under state law is not determinative that the claim is non-core.  NFC further points out, however, that neither the plaintiff nor the defendant is a debtor under the Bankruptcy Code.  GenMa counters by citing authority that focuses on the impact that the claim could have on a plan of reorganization and asserts that the settlement between GenOn and the Owner-Lessors would have been different if the existence of NFC's claim had been known.  GenMa further argues, with supporting authorities that claims that could and should have been brought during a bankruptcy case are core.  The Court finds that each of these theories, however, fail when the subject claim exists between two nondebtor parties.  Finally, GenMa asserts that the claims are core under 11 U.S.C.

§ 157(b)(2)(A) and (B) with supporting authority standing for the proposition that post-confirmation lawsuits that reassert pre-confirmation issues are core. In this instance, however, there is no claim against a bankruptcy estate and any estate administration issue must relate solely to the viability of a post-confirmation debtor. The Court finds that the claims are non-core. Even if the Court is wrong in its assessment, the Court has significant concerns regarding its constitutional authority to enter a final judgment in this dispute. *See Stern v. Marshall*, 131 S.Ct. 2594 (2011). The Court finds this factor to support withdrawal of the reference.

### Conclusion

The above analysis yields two competing considerations. Notions of efficiency and consistency support a conclusion that this Court should adjudicate the parties' dispute. To the contrary, giving significant importance to the *Holland* factor of core vs. non-core as well as concerns on the limits of this Court's constitutional authority suggests that the District Court should be the court to enter a final judgment in this proceeding. Accordingly, the Court believes that the proper balance under the circumstances presented is that the reference should be withdrawn with a directive from the District Court this this Court handle all pre-trial matters.

**SIGNED: August 14, 2019.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**